GEOFFREY S. BERMAN
United States Attorney for
the Southern District of New York
By: ALEXANDER WILSON
Assistant United States Attorney
One St. Andrew's Plaza
New York, New York 10007
Tel. (212) 637-2453

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| UNITED STATES OF AMERICA, | VERIFIED COMPLAINT FOR FORFEITURE |
| Plaintiff, | |
| v. | 19 Civ. 2191 |
| | ECF case |
| Approximately $47,659.52 formerly held in account numbered 6901768747 held in the name of Torfinex Corp. at Bank of New York; and | |
| Approximately $27,032.05 formerly held in account numbered 6902748448 in the name of Torfinex Corp. at Bank of New York; | |
| Defendants-in-rem. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Plaintiff United States of America, by its attorney, Geoffrey S. Berman, United States Attorney for the Southern District of New York, for its verified complaint alleges, upon information and belief, as follows:

## I.    JURISDICTION AND VENUE

1.    This is a civil action in rem commenced by the United States of America seeking the forfeiture of (1) approximately $47,659.52 formerly held in account numbered 6901768747 held in the name of Torfinex Corp. at Bank of New York, and (2) approximately

1

Bank of New York (together, the "Defendants-in-rem" or the "Defendant Currency," formerly held in the "Torfinex Accounts"). The Defendant Currency is subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(A), as "property, real or personal, involved in a transaction or attempted transaction in violation of section 1956 . . . of this title [relating to money laundering], or any property traceable to such property."

2. The Court has jurisdiction pursuant to Title 28, United States Code, Sections 1345 and 1355.

3. Venue is proper under Title 28, United States Code, Sections 1355(b) and 1395, because acts and omission giving rise to the forfeiture took place in the Southern District of New York and the Defendant Currency was seized in the Southern District of New York.

4. The Defendant Currency is presently in the custody of the United States Marshals Service.

## II. PROBABLE CAUSE FOR FORFEITURE

5. This forfeiture action arises out of an investigation of money laundering and operation of an unlicensed money transmitting business by multiple parties in the late 1990s. The investigation, which resulted in the indictments of numerous persons including the Torfinex Corporation ("Torfinex") and its President, Alexey Volkov ("Volkov").[1] *See United States v. Peter Berlin*, et al., 99 Cr. 914 (SWK). The criminal scheme involved the use of bank accounts held at the Bank of New York ("BNY"), including the Torfinex Accounts.

6. The investigation revealed that in or about 1996, Peter Berlin, a Russian émigré, opened bank accounts at BNY including: (1) account numbered 6300813206 in the name

---

[1] Volkov never appeared in the criminal case and remains a fugitive from justice. Torfinex also never appeared in the criminal case and was dissolved in 2002.

2

of Benex International Co., Inc. ("Benex") (the "Benex Account"), and (2) account numbered 6300946826 in the name of BECS International LLC ("BECS") (the "BECS Account"), with the help of his wife and codefendant, Lucy Edwards, also a Russian émigré and a BNY Vice President at the time. The accounts held in the names of Benex and BECS proceeded to facilitate the unregulated flow of approximately $7 billion originating in Russia to third-party transferees around the world as part of an underground money transfer business with ties to Russian banks based in Moscow called Depozitarno-Kliringovy Bank ("DKB") and Sobinbank. The illegal banking network of which the Benex and BECS Accounts were a part was designed in part to allow Russian individuals and businesses to wire transfer funds in and out of Russia in violation of Russian currency controls and to thereby defraud the Russian government of customs duties and tax revenue.

7. Moreover, Benex, BECS, and a third entity, Torfinex, operated as front companies on behalf of DKB and its principals. The investigation revealed that neither Benex, BECS nor Torfinex engaged in the manufacture, distribution, purchase, sale, or shipping of any goods. Rather, the business of Benex and BECS consisted exclusively of receiving wire transfers to Benex and BECS BNY accounts and transmitting those funds to third parties, via transfers executed by Torfinex employees.

8. Both DKB and Sobinbank transferred funds to the Benex and BECS Accounts using correspondent accounts held at BNY.[2] The conduct continued from in or about February 1996 up to and including July 1999.

---

2 At the conclusion of a related civil action against BNY, *United States v. $14,000,000*, 05-CIV-9456 (VM) (SDNY), BNY agreed to pay $38 million in penalties and victim compensation to resolve criminal proceedings resulting from BNY's failure to comply with mandatory reporting requirements under the Bank Secrecy Act. BNY admitted that it failed to conduct adequate due diligence or adequately monitor the Benex and BECS accounts, which were the highest fee producing accounts at the One Wall Street Branch of BNY during the offense conduct. The voluminous wires out of Benex and BECS, BNY further admitted, should have raised red flags about money laundering and been conveyed to law enforcement. A separate civil action against funds seized from Sobinbank and

3

9. Typically, large deposits were made into the Benex and BECS Accounts from Sobinbank or DKB Accounts, and then the funds transferred out of the accounts on the same day or within several days, to a large number of third-party transferees around the world. The Benex and BECS Accounts were operated by employees of Torfinex, who executed numerous, often hundreds, of wire transfers per day, using BNY-provided software to carry out instructions from DKB.

10. These transfers were done from a small single-room office in Queens operated by the name Torfinex Corporation since mid-1996. The office was located at 118-21 Queens Boulevard in Forest Hills, New York (the "Queens Office"), which was also the mailing address provided to BNY for Benex and BECS.

11. The investigation further revealed that in addition to Torfinex employees operating the Benex Account, Benex regularly sent funds to and received funds from Torfinex accounts, including the Torfinex Accounts.

12. During the period from September 1998 to March 1999, for example, the Benex Account made 115 transfers totaling more than $55 million to Torfinex as the beneficiary, and during that same period received 46 transfers totaling more than $50 million from Torfinex. Despite the high volume of transfers effectuated by the Benex, BECS and Torfinex accounts, not one of these entities was licensed to operate a money transmitting business or as a branch or agency of a foreign bank, as required by federal law.

13. Throughout the period of the illegal money transmitting conduct, it was illegal under New York State law to operate a money transmitting business without a New York State license. Under Section 650(2)(b)(1) of the New York State Banking Law, the operation of

---

DKB correspondent accounts concluded with the forfeiture of $10,635,442.84 pursuant to Stipulation and Order dated August 13, 2001. *United States v. $15,270,885.69 USC, et al.*, 99-CIV-10255 (RCC).

an unlicensed money transmitting business was punishable as a felony if the business knowingly received for transmission from one or more individuals a total of $10,000 or more in a single transaction, a total of $25,000 or more during a period of thirty days or less, or a total of $250,000 or more during a period of one year or less. Under NYSBL Section 650(2)(a), the operation of an unlicensed money transmitting was otherwise a misdemeanor.

14. During the relevant period, neither Torfinex Corporation, nor Benex or BECS, had a license to operate a money transmitting business under the laws of New York State.

15. Torfinex Corporation was operated by Volkov, as President, who also, along with Berlin, had signatory authority on the Benex Account. Volkov was also connected to an entity – "Sinex Bank Inc." – that was a principal ordering customer for transfers in excess of $2.5 billion to the Benex and BECS Accounts in the period between May 1997 and April 1999, through a BNY account held in the name of DKB. Bank records from a United States financial institution at which Sinex maintained an account described Sinex Bank as incorporated and licensed as a "bank" in Nauru, a known haven for money launderers. Volkov was one of the signatories on this account, described as Managing Director of Sinex Bank.

16. In September 1997, Torfinex submitted an application to the New York State Banking Department ("NYSBD") for a money transmitting license, with a supporting letter from DKB promising to pledge up to $1 million to guarantee Torfinex's obligations as a money transmitter. On or about October 1, 1997, the NYSBD directed Torfinex to cease engaging in the business of transmitting money while its application was pending. Volkov, however, instructed employees of Torfinex to continue transmitting funds for Benex and BECS. Torfinex's application for a money transmitting license was never approved.

17. On or about September 16, 1999, Volkov and Torfinex, along with Berlin, Edwards, Benex and BECS, were indicted in *United States v. Berlin, et al.,* 99 Cr. 914 (SWK), on charges of conspiracy to transmit money and receive deposits illegally in violation of Title 18, United States Code, Section 371; illegal money transmitting, in violation of Title 18, United States Code, Sections 1960 and 2; and illegally receiving deposits, in violation of Title 12, United States Code, Section 378(a)(2) and Title 18, United States Code, Section 2.

18. In February 2000, Berlin, Edwards, Benex and BECS each pled guilty to certain counts of a Superseding Information, S1 99 Cr. 914 (SWK). All four pled guilty to conspiracy, in violation of Title 18, United States Code, Section 371 to, among other things, illegal money transmitting, in violation of 18, United States Code, Section 1960, and to commit money laundering, in violation of Title 18, United States Code, Section 1956. Berlin and Edward also pled guilty to aiding and abetting foreign banks in establishing unauthorized branches and agencies in the United States, in violation of Title 12, United States Code, Section 3105 and 3111. Benex and BECS also pled guilty to illegal money transmitting in violation of Title 18, United States Code, Section 1960. Funds seized from the Benex Account and BECS Account were forfeited to the United States by Final Order of Forfeiture dated September 7, 2006 (99 Cr. 914 (SWK), D.E. 33).

19. As noted above, Volkov is a fugitive from justice, and Torfinex was dissolved in 2002 without having appeared to face the charges against it.

*The Defendant Funds*

20. On or about August 20, 1999, the Honorable Naomi Reice Buchwald, then a United States Magistrate Judge, issued a warrant authorizing the seizure of funds from the

Torfinex Accounts, which resulted in the seizure of the Defendant Currency on or about August 25, 1999.

21. The Defendant Currency is therefore forfeitable to the United States as property involved in money laundering and in the operation of an unlicensed money transmitting business.

### III. CLAIMS FOR FORFEITURE

22. Incorporated herein are the allegations contained in paragraphs one through twenty-one of this Complaint.

23. Pursuant to Title 18, United States Code, Section 981(a)(1)(A), "[a]ny property, real or personal, involved in a transaction or attempted transaction in violation of section 1956, 1957 or 1960 of this title, or any property traceable to such property" is subject to forfeiture to the United States.

24. The Defendant Currency is therefore subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(A) as property involved in (a) money laundering in violation of Title 18, United States Code, Sections 1956 and (b) operation of an unlicensed money transmitting business, in violation of Title 18, United States Code, Section 1960.

WHEREFORE, plaintiff United States of America prays that process issue to enforce the forfeiture of the Defendant Currency and that all persons having an interest in the Defendant Currency be cited to appear and show cause why the forfeiture should not be decreed, and that this Court decree forfeiture of the Defendant Currency to the United States of America

for disposition according to law, and that this Court grant plaintiff such further relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Dated: New York, New York
      March 11, 2019

                                  GEOFFREY S. BERMAN
                                  United States Attorney for the
                                  Southern District of New York
                                  Attorney for the Plaintiff
                                  United States of America

By: _____
         ALEXANDER WILSON
         Assistant United States Attorney
         One St. Andrew's Plaza
         New York, New York 10007
         Tel No. (212) 637-2453

## VERIFICATION

STATE OF NEW YORK           )
COUNTY OF NEW YORK          :
SOUTHERN DISTRICT OF NEW YORK )

NAUSHAUN RICHARDS, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI") and as such has responsibility for the within action; that he has read the foregoing complaint and knows the contents thereof, and that the same is true to the best of his own knowledge, information and belief.

The sources of deponent's information and the ground of his belief are conversations with other law enforcement officers and others, official records and files of the FBI and the United States Government, and information obtained directly or indirectly by deponent during an investigation of alleged violations of Title 18 of the United States Code.

_____
NAUSHAUN RICHARDS
Special Agent
Federal Bureau of Investigation

Sworn to before me this
8th day of March, 2019

_____
NOTARY PUBLIC

SARA A. CONNOLLY
Notary Public, State of New York
No. 01CO6358461
Qualified in New York County
Commission Expires May 08, 2021

9